UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

IN ADMIRALTY

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON SUBSCRIBING
TO POLICY NO. 229076,

    Petitioner,

v.

BADIA NAVIGATION, LLC.

    Respondent.
_____/

Petitioner, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. 229076 (herein "Underwriters"), by and through its undersigned attorneys, file this Petition for Declaratory Relief and state:

**NATURE AND SUBJECT OF ACTION**

1. This is an action in Admiralty pursuant to Federal Rules of Civil Procedure Rule (9)(h) as the subject matter of this action is a marine insurance policy.

2. This is also an action for Declaratory Relief pursuant to 28 U.S.C. § 2201.

3. The marine insurance policy at issue is a Seawave Yacht Insurance policy issued to Named Insured, Badia Navigation, LLC., bearing policy number 229076 and effective dates of 29 March 2023 to 29 March 2024, and insuring a 2014 Sunseeker Motor Yacht named OUT OF HAND bearing identification number XSK05974D314 (hereinafter "the Policy"). A complete certified copy of the Policy is attached hereto as Exhibit A.

## THE PARTIES

4. The Policy at issue is a surplus lines policy 100% underwritten by Munich Re Syndicate Limited, a Lloyd's of London syndicate.

5. At all material times, BADIA NAVIGATION, LLC. ("Badia Navigation") was the titled owner of 2014 Sunseeker Motor Yacht named OUT OF HAND and bearing identification number XSK05974D314 ("the Yacht").  Badia Navigation is a Florida limited liability corporation.

## JURISDICTION AND VENUE

1. This Court has admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333, as the subject matter of this action involves a contract of wet marine insurance.

2. Venue is proper in the Southern District of Florida pursuant to 28 USC § 1391(a) because the Policy was delivered to the Insured at the Florida address reflected on the Policy; the fire loss which is the subject of the disputed claim for insurance benefits occurred in Miami-Dade County, Florida; and the Insured's request for payment under the Policy would be made in Miami-Dade County, Florida.

3. All proper and present interests are before the Court by proper process.

4. All conditions precedent to the initiation and maintenance of the action have been complied with, have occurred, or have been waived.

## FACTUAL ALLEGATIONS

### *Procurement of the Policy*

5. On March 22, 2023, a condition and value survey ("CVS") was conducted of the yacht and submitted in conjunction with an application for yacht insurance.

6. At the time of application, the Yacht had been for sale for several months.

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

7. The survey concluded the overall condition of the Yacht was average, and set forth the various recommendations for repair.

8. The Policy was bound with an effective date of March 29, 2023, contingent upon completion of the repairs recommended in the CVS and submission of a letter of compliance by the surveyor, no later than April 30, 2023.

9. On April 28, 2023, Badia Navigation, LLC. entered into a Sale and Purchase Agreement with a potential buyer in the amount of $425,000, subject to survey, sea trial and bottom inspection.

10. The closing date listed in the Sale and Purchase Agreement was May 25, 2023.

11. The April 30, 2023, deadline for repairs passed. No letter of compliance was provided by Badia Navigation.

12. On May 3, 2023, the prospective purchaser made the required deposit. Four days later, on May 7, 2023, the fire occurred.

### History Of Work Prior To Fire

13. Badia Navigation has advised that all pre-fire maintenance and repair records have been produced.

14. These records evidence that a marine repairer, Marcel Gomez (under the company name SR Yacht Tech) performed work in the engine space on certain days in March of 2023 for purposes of addressing items recommended in the survey and otherwise recommended by the selling yacht broker to facilitate a potential sale.

15. The work performed in March by SR Yacht Tech did not involve the subject A/C unit where the fire originated.

- 3 -

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

16. As to the subject A/C unit, records from second repairer, DSAS Air, Inc., evidence it was called out on April 29, 2023, due to reports of the unit freezing up and not operating.

17. DSAS melted the ice, tested it, and found the unit low on freon. No signs of a leak were found, so they added freon to capacity and it ran fine. DSAS also found that the flex duct at both ends were disconnected. DSAS reconnected the blower ring but was unable to access the other end and noted that an electrician or carpenter would be needed to gain access.

18. DSAS advised Badia Navigation of these findings, but was never contacted and hired by Badia Navigation to complete this recommended work.

19. SR Yacht Tech returned in early May to complete generator work. It completed the reconnection of the loose duct hose that DSAS was unable to access (and included on survey).

20. No other inspection or repair of the A/C was performed.

21. The corroded connections and overcurrent protection later identified as the efficient proximate cause of the fire were not repaired; nor was the missing overcurrent protection cap replaced.

### *The Fire Investigation*

22. On May 7, 2023, a fire occurred aboard the yacht while it was unoccupied, docked and plugged into shore power at the Fontainebleau Marina in Miami Beach, Florida.

23. A notice of loss was submitted to Underwriters on May 8, 2023.

24. On May 9, 2023, Underwriters-appointed marine surveyor, Stewart Hutcheson, conducted an initial visual survey of the damaged yacht and made contact with Badia Navigation's authorized representative, Susana Rylander.

25. Surveyor Hutcheson documented the fire damage was concentrated on the starboard side of the yacht behind (not in) the switch panel. He also observed that prior to the fire,

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

an access port had been cut into the inboard molded starboard aft deck cabinet to access the engine room dampers and replace a switch relay for the automatic fire system. The automatic fire extinguisher was housed in the engine space and was not operative prior to the loss.

26. Based on these preliminary indications, Surveyor Hutcheson reported that the fire appeared to be electrical in nature and recommended appointment of technical experts.

27. Underwriters appointed a fire cause and origin (C&O) investigator and electrical engineer to investigate further, and attempt to identify the specific origin and cause of the fire.

28. Badia Navigation's authorized representative, Ms. Rylander, provided the following limited documentation on the Yacht: (a) a copy of the March CVS; (b) an October 2022 invoice from Glasstech for bottom paint and battery charter replacement; and (c) invoices for an annual fire certification.

29. Hutcheson requested copies of all service work performed on the yacht from 2022 through 2023. Ms. Rylander represented that the Yacht was "in storage with just regular cleaning and maintenance with V&J Yacht Services," but provided no documents reflecting same.

30. Certified fire investigator, Bill Nolan, attended the yacht a week after the fire to conduct a visual-only inspection of the yacht, confirm the general area of origin, and identify potential third parties that would need to be provided with notice of a future destructive inspection pursuant to National Fire Protection Association 921 governing fire cause and origin inspections.

31. Mr. Nolan identified that certain portions of the yacht, including the electrical panel, wall coverings, and the like, would have to be removed to access evidence of the cause of the fire.

32. Removals cause alteration and potential destruction of fire scene evidence under NPFA 921; therefore, all interested parties needed to be placed on notice and given an opportunity to participate in the destructive inspection.

33. Thereafter, the following third parties were placed on notice: Sunseeker (the yacht builder), Fontainebleau Florida Hotel, LLC. (owner of the marina), the Charter Agency (marina manager), and V&J Yacht Services (repairer hired by the Insured to conduct certain repairs).

34. Sunseeker, the Charter Agency and V&J Yacht Services opted to participate and sent attorneys and technical experts to the inspection.

35. Based upon joint scheduling availability, the inspection was set for October 31.

36. At the October inspection, the Underwriters' experts (Bill Nolan and Peter Layson) were informed *for the first time* by V&J Yacht Services that it subcontracted certain work (including work to the fire damper) to Marine All Services USA.

37. Although Badia Navigation had made payments directly to Marine All Services USA, Underwriters and its experts had not been informed of the name of this company despite requests for all such documentation.

38. Further, as the inspection progressed in the salon area, the top of a settee was lifted, and it was discovered that the salon AC unit was located underneath it. The parties present agreed that the AC unit was within the area of origin.

39. Without removal of the settee and further inspection of the unit, it could not be ruled in or out as a cause or contributing cause of the fire.

40. Underwriters' experts proposed to remove the settee to visually inspect the AC unit further.

41. Both Sunseeker representatives and the Named Insured's marine surveyor, Malcolm Elliot, objected to such action and insisted the inspection be terminated to place additional parties on notice. Our representatives were forced to acquiesce.

42. As a result of the October inspection, a total of 9 parties were on notice of the inspection, and 5 confirmed to attend with technical representatives at this time.

43. Both Sunseeker (the builder) and Dometic (the AC unit manufacturer) were requested to provide information of additional part and component manufacturers. The continued cause and origin inspection was tentatively scheduled for mid-January, but ultimately moved to March 5-6, 2024, to accommodate the availability of all responding parties, attorneys, and technical experts.

44. The second joint cause and origin inspection of the Yacht was conducted on March 5-6, 2024.

45. During that inspection, certain pieces of evidence were removed and retained by agreement of all present for potential forensic inspection.

### *The Fire Origin & Cause Determination*

46. The two visual inspections and two joint fire origin and cause investigations reveal the following findings and sequence of events leading up to the May 7, 2023 fire.

47. The fire originated at the starboard forward A/C unit located below the salon settee area.

48. The weathertight protective cover that covers and isolates the A/C compressor power terminals and thermal overload protector was missing prior to the fire and had to have been manually removed as evidenced by the missing nut and lack of remnants of the high temperature plastic evidence.

- 7 -

49. The lack of cover exposed these components to ambient moisture and humidity, leading to gradually worsening corrosion over a lengthy period.

50. Corrosion caused a high resistance connection and cyclical overheating which eventually igniting nearby materials.

51. The thermal overload protector also failed due to corrosion.

52. Under normal conditions, the protector is thermostatic, preventing overheating when electrical overload or fluctuations exceed a certain safety level, by severing the electrical connection to the compressor and turning off the motor.

53. This allows the temperature to decrease, which in turn closes the open contact, and completes the circuit for the next time the unit cycles on.

54. The heat damage to the thermal overload protector evidences that electricity was feeding into the compressor and continued to do so even while the temperature rose to the level to ignite the first fuel source.

55. When working properly, the overheat protector would have been triggered before the temperature rose high enough to ignite the first fuel source.

56. The compressor terminals and thermal overload protector all sit at the highest point of the A/C unit; with the wood bottom of the salon settee is positioned about 1-2 inches above these connections.

57. Due to the missing protective cover, in the event of high resistance thermal runaway there was no thermal protection between the terminals/protector and the wood.

58. As the cyclical high resistance connection from corrosion worsened over time, the heat generated near those connections when the compressor cycled on increased gradually over time near the wood of the settee.

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

59. Eventually, on the date in question, the temperature reached the already-compromised wood's ignition level, and it started burning.

60. The heat and flames were carried upward through the A/C ducting and spread through the starboard salon area.

61. The efficient proximate cause of the fire was long-term wear and tear, gradual deterioration and corrosion of the compressor terminals and thermal overload protector, which caused cyclical overheating and deterioration of the terminals and surrounding materials, resulting in ignition of surrounding fuel sources.

62. Due to the above, the Yacht posed a significant and increased risk of personal injury and/or property damage due to fire, which rendered the Yacht unseaworthy.

63. The increased risk of fire is evident by the occurrence of the very fire at issue on May 7, 2023.

## RELEVANT POLICY WORDING

64. Certain Underwriters at Lloyd's London underwrote the Seawave Yacht Insurance Policy bearing Policy No. 229076 and effective dates of March 29, 2023 to March 29, 2024, to Named Insured, Badia Navigation, LLC. and insuring the sunseeker M/Y OUT OF HAND ("the Yacht").

65. The Policy's insuring agreement states:

**BOAT CONTRACT INSURING AGREEMENT**
***We***, The Underwriters, and ***You***, the insured, agree to comply with the terms of this Contract for our mutual benefit on the condition that ***You*** pay the charges and use reasonable care and diligence in the operation and maintenance of the insured Boat, ***we*** will pay for direct physical loss or damage to the Boat from any external cause minus any applicable Deductible as shown on the ***Declarations Page***.

Notwithstanding the above, coverage afforded hereon is in accordance with attached wording and may be varied by endorsement as shown within Endorsement Page(s)

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

contained in this Contract, such endorsements being specifically noted on the *Declarations Page*.

66. Section 1 of the Policy sets forth the Hull subject to the following terms and conditions:

**SECTION 1 – HULL**

If a *Sum Insured* is shown for Section 1 on the *Declarations Page*, *We* will pay for direct accidental physical loss or damage to Your Boat which occurs during the period of this insurance contract within *Navigation Limits* as detailed on the above mentioned *Declarations Page* and subject to the terms and conditions of this Contract. At Our option, *We* may pay the reasonable cost of repairing Your Boat. The amount(s) payable under this Section will not exceed the amounts shown on the *Declarations Page* under Section 1.

67. Section 1 Hull coverage is further limited by Exclusions C and K:

**EXCLUSIONS**

We do not provide coverage under Section 1 (Hull) for losses or damages arising directly or indirectly from:

C.  Wear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets or marine life, or electrolytic or galvanic action.

K.  Any claims caused by or arising out of the unseaworthiness or lack of repair of Your Boat caused by the lack of reasonable care and due diligence in the safeguard or maintenance of Your Boat by You or any other party in control of Your Boat with Your authority;

68. The Policy also contains the following express Seaworthiness Warranty, which in the event of breach renders the Policy void:

**GENERAL CONDITIONS**

**SEAWORTHINESS WARRANTY**

It is warranted that the scheduled Boat is seaworthy at the inception of this *Contract*.

Violation or failure to comply with of this warranty will void this *Contract* from its inception.

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Furthermore and unless *We* have agreed in writing to the contrary, if we request a survey of the scheduled *Boat* then such survey must be received as required in writing by *Us*. If the survey makes any recommendations with respect to the scheduled *Boat*, then it is an express warranty of this *Contract* that *We* require *Your* written confirmation of compliance with all such recommendations pertaining to safety and seaworthiness prior to any loss giving rise to any claim hereunder.

## THIS ACTION

69. Due to findings at the October 2023 Inspection, and the lack of any confirmation that the Insured had complied with the survey recommendations, a Reservation of Rights was issued in November of 2023.

70. Therein, Underwriters provided the Insured with notice and reserved its rights to potentially decline coverage based on the Policy's wear and tear exclusion, mechanical breakdown exclusion, and/or unseaworthiness/lack of repair exclusion.

71. In January of 2024, a Supplemental Reservation of Rights was issued due to the Insured's failure to provide the requested confirmation of completed or ongoing repair, maintenance, and service to the yacht.

72. Therein, Underwriters confirmed that the only documents that had been provided were: (1) MDPD incident report info; (2) the Purchase Agreement; (3) Proof of 10% purchase deposit; (4) Marina monthly invoices for March - May of 2023; (5) the March 22, 2023 Survey; (6) GlassTech Invoices for bottom work dated in October of 2022; and (7) Florida Elite Protection invoices dated 3-9-23 and 4-23-23 related to inspection and re-certification of Fireboy system. Prior requests for documentation were also summarized.

73. On January 11, 2024, attorney George Mitchell provided Underwriters with a letter of representation for Badia Navigation and requesting certain information and documentation regarding the ongoing claim investigation.

74. On January 23, 2024, counsel for Badia Navigation, LLC. filed Civil Remedy Notice No. 729002.

75. On February 2, 2024, undersigned counsel responded to Badia Navigation's request for documents and information.

76. On February 9, 2024 (9 months after the loss), counsel for Badia Navigation provided a link of additional documents.

77. On February 22, 2024, Underwriters filed its response to the CRN.

78. Between March 5 and March 6, 2024, a second joint inspection of the Yacht was conducted jointly with a more expansive group of interested parties.

79. During the inspection additional information was discovered related to the A/C unit where the fire originated, which lead to a request for additional information and documentation to Badia Navigation and third-party Dometic, on March 5, 2024.

80. On March 6, 2024, Underwriters submitted a Supplemental Request for documents to counsel for Badia Navigation.

81. On March 20, 2024, counsel for Badia Navigation responded and produced additional documentation which had never previously been produced.

82. On or about June 20, 2024, Underwriters issued its Disclaimer of Coverage to counsel for Badia Navigation.

83. Due to the multiple reservations of rights, and Civil Remedy Notice, the existence or non-existence of coverage or the fire loss under the Policy is in dispute and will continue to be in dispute; thereby necessitating a declaration of the rights and obligations of the Parties under the Policy.

## COUNT I- THERE IS NO COVERAGE FOR THE LOSS

84. Underwriters incorporates paragraphs 1-68 as if fully set forth herein.

85. Coverage under Section I of the Policy is limited to "direct physical loss or damage to the Boat from any external cause minus any applicable Deductible as shown on the ***Declarations Page***" conditioned on the Insured using "reasonable care and diligence in the operation and maintenance of the insured Boat…"

86. Fire caused by long term and gradual corrosion and high resistance electrical connections is not an "external cause" as provided in the Insuring Agreement and Section 1. Therefore, the Policy does not provide an initial grant of coverage for the loss.

87. Additionally, the long term and gradual corrosion, high resistance electrical connections, and failure of the overcurrent protection was due to a lack of "reasonable care and diligence in the maintenance of the Boat…"

88. Therefore, Section 1 also does not provide an initial grant of coverage for the loss because the Insured failed to satisfy a condition precent to coverage.

## COUNT II- COVERAGE UNDER SECTION 1 IS EXCLUDED

89. Underwriters incorporates paragraphs 1-68 as if fully set forth herein.

90. Alternatively, coverage is excluded by Exclusion C and Exclusion K.

91. Exclusion C excludes coverage for wear and tear, gradual deterioration, and corrosion.

92. The fire was caused by high resistance connection due to corrosion of the compressor connections and thermal overcurrent protector.

93. Corrosion is a gradual deterioration of the surface of the materials.

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

94. Further, the cyclical nature of the high resistance connection and heating of the nearby wood materials, which eventually ignited, also constitutes wear and tear and gradual deterioration.

95. Exclusion K excludes coverage for "any claims caused by or arising out of the unseaworthiness or lack of repair of Your Boat caused by the lack of reasonable care and due diligence in the safeguard or maintenance of Your Boat by You or any other party in control of Your Boat with Your authority."

96. Records produced evidence limited routine maintenance with the yacht in the approximate year preceding the fire.

97. The insured yacht was unused and kept at the marina. SR Yacht was paid to conduct specific and limited repairs to the yacht for purposes of sale but did not attend and maintain it on a regular basis.

98. There was no other "maintenance captain" and the Insured has confirmed he personally never visited the yacht while at this marina.

99. Physical evidence demonstrates that that the overcurrent protective cap was missing for an extended period, as the corrosion identified at inspection would have taken many months to develop.

100. Additionally, water intrusion and moisture were a widespread problem on the yacht as document by the survey, including but not limited to the development of mushrooms on surfaces and wood which was soft to the touch.

**COUNT III- THE POLICY IS VOID DUE TO A BREACH OF THE SEAWORTHINESS WARRANTY**

101. Underwriters incorporates paragraphs 1-68 as if fully set forth herein.

- 14 -

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor, New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

102. Additionally, and/or alternatively, the Policy's Seaworthy Warranty was violated which voids the Policy from inception.

103. To be seaworthy, the yacht must have been reasonably fit for recreational pleasure use, both while in navigation and while being moored at its dock.

104. Safety is a key aspect of seaworthiness- including protection from electrical overcurrent and fire.

105. The following conditions created an increased risk of fire (1) the overcurrent protector was not in working order; and (2) the compressor electrical connections were corroded resulting in cyclical overheat at the connections.

106. The presence of excessive moisture and water intrusion, left to remain for extended periods, contributed to an increased risk of fire and malfunction of vessel systems necessary for safe navigation and moorage.

107. The seaworthiness warranty (both express and implied) is an entrenched principle of general maritime law.

108. Based upon the Policy's choice of law, the interpretation and application of the Seaworthiness Warranty is governed by the General Maritime Law of the United States ("GML").

109. GML requires strict compliance with express seaworthiness warranties.

110. Based upon GML principles and the express wording go the Policy, a breach of the seaworthiness warranty renders the Policy void.

WHEREFORE, Petitioner respectfully requests that this Court enter a final judgment in Underwriters' favor declaring that:

a. There is no coverage for the subject loss under the Policy Insuring Agreement and Section 1.

- 15 -

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

    b.    Alternatively, even if there were an initial grant of coverage under Section 1, coverage is excluded under both Exclusion C and Exclusion K.

    c.    Alternatively, even if there were an initial grant of coverage under Section 1 which was not otherwise excluded; the Policy is void from inception because the Seaworthiness Warranty was breached.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

- 16 -

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Dated:  June 20, 2022

                                Respectfully submitted,

                                HAMILTON, MILLER & BIRTHISEL, LLP
                                Attorneys for Petitioner, CERTAIN
                                UNDERWRITERS AT LLOYD'S OF LONDON
                                SUBSCRIBING TO POLICY NO.
                                B0750RMAMY2211305

                        By:   *s/ Krista Fowler Acuña*
                                Krista Fowler Acuña
                                Fla. Bar No. 650791
                                kacuna@hamiltonmillerlaw.com
                                Hamilton, Miller & Birthisel, LLP.
                                150 Southeast Second Ave.
                                Suite 200
                                Miami, FL 33131
                                *Counsel for Petitioner*

- 17 -

HAMILTON, MILLER & BIRTHISEL, LLP
41 Madison Avenue, 31st Floor , New York, NY 10010 · Telephone: 305-379-3686 · Facsimile: 305-379-3690